# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| VINCENT PATRICK KELLY a/k/a VICTORIA KELLY, | Case No. 4:24-cv-10828 |
| *Plaintiff*, | Shalina D. Kumar<br>United States District Judge |
| v. | Patricia T. Morris<br>United States Magistrate Judge |
| YBARRA, | |
| *Defendant*. _____/ | |

## REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 16)

**I.     RECOMMENDATION**

For the following reasons, **IT IS RECOMMENDED** that the Court **DENY** Defendant's motion for summary judgment on the basis of exhaustion. (ECF No. 16). If this recommendation is adopted, the Undersigned will enter a scheduling order setting deadlines for the completion of discovery and the filing of dispositive motions.

1

II.     **REPORT**

    A.     **Background**

Plaintiff[1] is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). She brings claims under 42 U.S.C. § 1983 for violations of her constitutional rights, specifically alleging retaliation and targeted harassment motivated by her gender identity/expression. (ECF No. 1). More specifically, Plaintiff claims that Defendant issued her two retaliatory misconduct tickets, one on September 19, 2023, and the other on October 7, 2023. (*Id.*). Plaintiff also claims that Defendant was deliberately indifferent to her serious medical needs by misgendering her in violation of the Eighth Amendment; violated her right to Equal Protection under the Fourteenth Amendment; and violated the Americans with Disabilities Act and the Rehabilitation Act due to dissimilar treatment from similarly situated cisgender prisoners. (*Id.*).

On December 20, 2024, Defendant filed the instant motion for summary judgment on the basis of exhaustion. (ECF No. 16). Plaintiff was ordered to file a response by January 16, 2025 (ECF No. 17) but failed to do so, and on May 23, 2025, the Court ordered Plaintiff to show cause why the case should not be dismissed for lack of prosecution (ECF No. 19). Plaintiff filed a letter on June 20, 2025 (ECF

---

[1] In the complaint, Plaintiff states that she is a "Trans-woman" and refers to herself using feminine pronouns, *e.g.*, she/her. (ECF No. 1, PageID.1–2). The Undersigned will therefore use feminine pronouns when referring to Plaintiff.

2

No. 20), and the Court vacated the order to show cause and construed the letter as a response to Defendant's motion (ECF No. 22). Defendant filed a reply on July 17, 2025. (ECF Nos. 24, 25).

### B.     Grievance Process

Defendant argues that Plaintiff failed to exhaust any claims against her before filing suit, as evidenced by the MDOC Step III Grievance Report for Plaintiff that reflects no grievances have been pursued through Step III of the grievance process. (ECF No. 16-4). Defendant focuses largely on the allegedly retaliatory misconduct tickets, which the Undersigned will analyze below. Because of the timing of the events in this case, two different versions of the relevant policy directive are applicable. As to the September 19, 2023 ticket, the 2019 version of Policy Directive 03.02.130 applies; whereas, the October 7, 2023 ticket falls under the 2023 version.

Policy Directive 03.02.130 outlines the MDOC's three-step, internal process for prisoners to raise formal complaints. (ECF Nos. 16-2 (2019 version), ECF No. 16-3 (2023 version)). Under the 2019 version, a prisoner was required to first informally "attempt to resolve the issue with the staff member involved within two business days" and if unsuccessful, file a Step I grievance within five business days. (ECF No. 16-2, PageID.76). A prisoner's Step I grievance needed to include the "[d]ates, times, places, and names of all those involved in the issue being grieved." (*Id.*). If a prisoner was dissatisfied with the disposition of the Step I

3

grievance or did not receive a timely response, then she could file a Step II grievance using the appropriate form. (*Id.* at PageID.78). Similarly, if a prisoner was dissatisfied with the Step II response or did not receive a timely response, she had ten days to file a Step III grievance. (*Id.* at PageID.79).

However, not all issues were grievable under the 2019 version. Paragraph J lists over a dozen reasons for rejecting a grievance, including when a prisoner grieved a decision made in a Class II or Class III misconduct hearing because prisoners were required to follow a separate process to appeal these decisions. (*Id.* at PageID.75). Importantly, in *Siggers v. Campbell*, 652 F.3d 681, 693–94 (6th Cir. 2011), the Sixth Circuit held that the same language from a prior version of Policy Directive 03.02.130 required a prisoner to "argue that h[er] receipt of a misconduct ticket was based on conspiracy or retaliation during the first misconduct hearing." *Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5 (E.D. Mich. Feb. 27, 2019), *report and recommendation adopted*, 2019 WL 1349607 (E.D. Mich. Mar. 26, 2019).

Under the 2023 version, the grievance process is much the same. (*See* ECF No. 16-3). A key difference between the 2019 and 2023 versions is that the latter provides that a prisoner who "wishes to pursue a claim that retaliation is the basis for a Class II or III misconduct . . . must file a grievance on the sole issue of retaliation, and [the grievance] shall not be rejected as a grievance on the hearing

4

decision." (*Id.* at PageID.84).

    C.    **Summary Judgment Standard**

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that would affect "the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there . . . are any genuine factual issues that properly can be resolved only by a finder of fact . . . ." *Id.* at 249–50, 255. Accordingly, "the evidence, all facts, and any inferences that may be drawn from the facts" must be viewed "in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

The nonmoving party cannot rebut a Rule 56 motion by merely alleging that a genuine factual dispute exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986) (quoting Fed. R. Civ. P. 56(e)). Instead, the nonmoving party must show that there is sufficient evidence in the record for "a reasonable finder of fact could find in its favor." *Anderson*, 477 U.S. at 248.

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine dispute of material fact. *Carver v. Bunch*, 946

5

F.2d 451, 454–55 (6th Cir. 1991). And where, as here, the moving party bears the burden of proof, they have an "initial summary judgment burden [that] is higher in that [they] must show that the record contains evidence satisfying [their] burden of persuasion" and "that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012).

### D. Discussion

Under the Prison Litigation Reform Act, prisoners may not bring actions against prison officials to challenge the conditions of their confinement without first exhausting their administrative remedies. 42 U.S.C. § 1997e(a) (2018); *Porter v. Nussle*, 534 U.S. 516, 523 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). And not only must prisoners exhaust their administrative remedies before filing a complaint, but they must do so "properly," meaning that they must "compl[y] with an agency's deadlines and other critical procedural rules. . . ." *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006).

As noted above, Plaintiff alleges that she was issued two retaliatory misconduct tickets. The first on September 19, 2023, and the second on October 7, 2023. The first falls under the 2019 version of Policy Directive 03.02.130, and the second under the 2023 version. (*See* ECF No. 16, PageID.57 n.2, 67–68).

#### 1. September 19, 2023 Misconduct Ticket

As to Plaintiff's claim that the September 19, 2023 ticket was issued out of

6

retaliation, Defendant argues that since Plaintiff failed to appeal or seek rehearing, she failed to properly exhaust her claims under the 2019 version of MDOC PD 03.02.130. (ECF No. 16, PageID.67). However, Plaintiff alleges that she was "threatened with segregation and assault if she didn't accept a plea of 1 day sanction" and "out of fear and being threatened [she] accepted a plea against her will." (ECF No. 1, PageID.6).

As Plaintiff notes, exhaustion is not required before pursuing a claim if an inmate faces threats, intimidation, or other interference that render the administrative process unavailable. *Ross v. Blake*, 578 U.S. 632, 644 (2016). Thus, "the question is whether prison officials took an adverse action that would deter a person of ordinary firmness from continuing with the grievance process." *Does 8-10 v. Snyder*, 945 F.3d 951, 966 (6th Cir. 2019) (internal quotation marks and citations omitted). The Sixth Circuit has cautioned that

> [t]his requirement is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment. Thus, unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should survive a motion for summary judgment.

*Id.* at PageID.966–67 (internal quotation marks and citations omitted).

In the reply, Defendant first argues that Plaintiff did not face a credible threat to challenging the misconduct ticket because it was a Class III ticket. Plaintiff had received many Class I or II tickets and thus would have been "familiar with the

7

misconduct process and [known] she could not receive segregation for a Class III ticket." (ECF No. 24, PageID.117). This argument is specious at best. In the light most favorable to Plaintiff, a threat of segregation *and assault* could deter a person of ordinary firmness from challenging the misconduct ticket, regardless of the technical Class III ticket penalties. And as Defendant admits, "by pleading guilty, Kelly foreclosed the exhaustion of the ticket under the *Siggers* process[.]" (*Id.*, PageID.118).

Defendant then argues that "even if Kelly did not waive any challenge to the ticket, she could have attempted to exhaust her retaliation claim under the grievance process." (*Id.* (citing *Parker v. Turner*, No. 20-12794, 2022 WL 722192, at *4 (E.D. Mich. Mar. 9, 2022)). *Parker* is distinguishable because in that case, the plaintiff was prevented from arguing that a misconduct ticket was retaliatory when the ticket was dismissed prior to hearing. Here, Plaintiff was allegedly threatened not to challenge the ticket, and such a threat would reasonably extend to filing a grievance to complain that the ticket was retaliatory in nature. "Furthermore, *Parker* is not binding on this Court, and this Court disagrees with the *Parker* court's interpretation of the MDOC policy." *Martin v. Halstead*, No. 1:21-CV-465, 2023 WL 2042180, at *1 (W.D. Mich. Feb. 16, 2023).

The *Parker* court cited to *Ali v. Simmons*, No. 1:19-cv-126, 2020 WL 6597562, *5 (W.D. Mich. May 5, 2020) for the proposition that "[i]f Plaintiff was

8

not afforded a hearing, he could have filed a grievance." No MDOC PD was cited in support of this assertion. In considering this very quote from *Ali*, another court aptly found that "the quote from *Ali* is misplaced because it is dicta and because it conflicts with the Sixth Circuit's rule on exhausting claims based on misconduct tickets." *Sampson v. Davis*, No. 2:19-CV-176, 2021 WL 2419618, at *3 (W.D. Mich. May 12, 2021), *report and recommendation adopted*, 2021 WL 2416894 (W.D. Mich. June 14, 2021). The Undersigned agrees that *Parker* is distinguishable, not binding, and in conflict with Sixth Circuit caselaw. Therefore, Plaintiff was not required to file a grievance on the September 19, 2023 misconduct ticket, and a genuine issue of material fact exists as to the availability of administrative remedies.

Ultimately, the law in this Circuit is that "if the plaintiff contends that [s]he was prevented from exhausting h[er] remedies," the defendant must "present evidence showing that the plaintiff's ability to exhaust was not hindered." *Surles v. Andison*, 678 F.3d 452, 457 n.10 (6th Cir. 2012). Defendant's contention that Plaintiff should have known that she could not be punished with segregation for this ticket falls far short of evidence establishing that her ability to exhaust was not hindered. The Undersigned accordingly recommends that Defendant's motion be denied as to the September 19, 2023 misconduct ticket.

### 2. October 7, 2023 Misconduct Ticket and Other Claims

Defendant next argues that Plaintiff did not properly exhaust her remaining

9

claims because she never pursued a grievance through the entire MDOC process. In support, Defendant submitted an affidavit signed by Departmental Analyst Carolyn Nelson and attendant report from the MDOC that tracks all prisoner grievances pursued through Step III. (ECF No. 16, PageID.91–92). The Report shows that between January 1, 2018 and May 1, 2024, Plaintiff did not file any Step III grievances. (*Id.* at PageID.92). Because Plaintiff failed to appeal any grievances through Step III, Defendant argues that none of her remaining claims have been properly exhausted.

In her complaint, Plaintiff says that she was prevented from pursuing her grievances "by the grievance coordinator's refusal to provide [S]tep II grievances to appeal [her Step I] rejections." (ECF No. 1, PageID.2). Further, Plaintiff says that she filed a grievance against Defendant on September 2, 2023, and that the grievance was improperly rejected at Steps I and II and she never received a Step III response. (*Id.*, PageID.4). More specifically, Plaintiff asserts that she attempted to file a Step III grievance but that it was "tampered with." (ECF No. 20, PageID.97).

Defendant has helpfully attached a copy of Steps I and II of this grievance (SMT-1071) to her reply. (ECF No. 25-2). At Step I, the grievance echoes the relevant part of the complaint. Plaintiff stated that on September 1, 2023, Defendant harassed Plaintiff about her personal letters and written songs; sexually degraded Plaintiff; called her belongings "disgusting"; insulted Plaintiff's sexual preferences,

10

sexuality, and transgender status; and forced Plaintiff to throw away her letters and songs.  (*Id.* at PageID.130).  Plaintiff explained that she attempted to resolve this issue with Defendant, as required by MDOC PD 03.02.130 ¶ Q,[2] to no avail.  (*Id.*).

The grievance was rejected at Step I for the following reason:

> Per PD 03.02.130 prisoners must attempt to resolve their issue with the appropriate staff in the appropriate department prior to filing a grievance.  They may choose to do this by either speaking directly to the staff involved or their supervisor.  The correct course of action would have been to notify the housing unit PC/ARUS or RUM.  Other staff you could contact includes CAPT, LT, or SGT., however they may NOT immediately write a grievance without some attempt to resolve the issue.  They may NOT use the incident itself as their attempt to resolve their issue.  However, They also MAY NOT use the grievance process as their "kite system" The grievant states he talked to staff however writes all of the dates as 9/1/2023, which is unreasonable in allowing staff to respond or even try to resolve the issue.  Grievance is REJECTED at STEP I for not attempting to resolve the issue appropriately.

(*Id.* (sic throughout)).[3]  For reference, MDOC PD 03.02.130 ¶ Q states:

> Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with *the staff member involved within two business days* after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs.  If the issue is not resolved, the grievant may file a Step I grievance.  The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

---

[2] *See* ECF No. 16-2, PageID.76.

[3] The Undersigned recites this response as written, and in doing so, acknowledges that the MDOC official who responded at Step I misgendered Plaintiff who had described herself as a transwoman in her Step I grievance.

11

(ECF No. 16-2, PageID.76 (emphasis added)).

Plaintiff appealed the denial at Step II, stating that the denial was the result of a strained interpretation of MDOC Policy. (ECF No. 25-2, PageID.131-132). The denial was upheld at Step II with no additional analysis. (*Id.*, PageID.133).

Plaintiff's Step II appeal is also attached to the complaint, and there the section provided for a Step III appeal is filled in, unlike the version submitted by Defendant. (ECF No. 1, PageID.11). At Step III, Plaintiff reiterated her contention that the grievance was improperly rejected at Steps I and II and stated: "This grievance is being placed in the U.S. Mail box to the Step III Process address to Richard Russell address: P.O. box 3003, Lansing, MI 48909 on: 10/22/23 by first class prepaid postage." (*Id.*). MDOC records do not reflect that the Step III appeal was ever received.

Defendant argues that Plaintiff's "tampering" allegation in her response is too conclusory to avoid the exhaustion requirement. (ECF No. 24, PageID.116). While this may be true, Defendant also admits that Plaintiff's complaint, "sworn under the penalty of perjury," states that Plaintiff "had mailed the Step III appeal[.]" (*Id.*). This, combined with the fact that the allegedly mailed Step III appeal itself states where and when it was sent, creates a genuine issue about whether it was in fact

12

properly sent as required.[4]

Defendant also argues that SMT-1071 cannot exhaust Plaintiff's claims because it was rejected on procedural grounds, reflecting that Plaintiff did not follow the proper procedures before filing suit. However,

> [w]hen a grievance has been rejected by the MDOC, the Court must consider whether it was *properly* rejected before finding the plaintiff's administrative remedies unexhausted. *See, e.g., Merrill v. King*, No. 2:22-CV-10541, 2022 WL 18402555, at *4 (E.D. Mich. Dec. 21, 2022), *report and recommendation adopted*, 2023 WL 361997 (E.D. Mich. Jan. 23, 2023). "[T]he Court is not required to blindly accept the state's application of the procedural rule." *Reeves v. Salisbury*, No. 11-CV-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), *report and recommendation adopted in relevant part*, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012). Exhaustion of administrative remedies means "using all steps that the agency holds out, and doing so *properly*." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal citations omitted); *see also Williams v. Winn*, No. 18-11060, 2019 WL 2252012 at *6 (E.D. Mich. Feb. 27, 2019) ("The rejection of a grievance is not, however, the end of the analysis. It is appropriate for the Court to review the prison official's administration of the state grievance procedure."), *report and recommendation adopted*, 2019 WL 1417166 (E.D. Mich. Mar. 29, 2019).

*Lentz v. Michigan Dep't of Corr.*, No. 2:24-CV-10198, 2025 WL 1023709, at *4 (E.D. Mich. Jan. 15, 2025), *report and recommendation adopted*, 2025 WL 817425 (E.D. Mich. Mar. 14, 2025).

Here, the rejection was not proper because Plaintiff complied with MDOC PD

---

[4] *Smith v. Brock*, No. 1:22-cv-149, 2023 WL 3871923, at *5 (W.D. Mich. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 3611730 (W.D. Mich. May 24, 2023), cited by Defendant, is distinguishable because that prisoner did "not state when he wrote the grievances, nor [did] he provide any information as to what they concerned."

03.02.130 ¶ Q, and the reasons given for the rejection contained requirements outside of that policy directive. Plaintiff was chastised for attempting to resolve the grievance with Defendant, even though the policy directive states that the grievant is required to attempt to resolve the issue with *the staff member* involved. She was also admonished for attempting to resolve the issue on the same day and not leaving enough time for resolution before filing the grievance, two requirements that cannot be found in the policy directive. *See also McBride v. Canlas*, No. 2:20-CV-212, 2021 WL 5332408, at *5 (W.D. Mich. Oct. 8, 2021) (holding that prisoner exhausted administrative remedies by sending the defendant a letter on the same day of the incident), *report and recommendation adopted*, 2021 WL 5323769 (W.D. Mich. Nov. 16, 2021). Therefore, Plaintiff's claims cannot be said to be unexhausted for these reasons.

Finally, Defendant argues that the grievance does not exhaust claims as to any conduct that occurred later or was not described in the grievance. This is true. However, Plaintiff also stated in her signed and sworn complaint that other attempts to grieve issues were thwarted by the grievance coordinator's refusal to provide Step II grievance forms. (ECF No. 1, PageID.2). Defendant does not address this issue in her motion and thus fails to carry her burden for summary judgment on exhaustion grounds. *See Surles*, 678 F.3d at 457 n.10

In sum, there are genuine issues of material fact as to exhaustion for each of

14

Plaintiff's claims. Therefore, the Court should deny Defendant's motion for summary judgment on the basis of exhaustion.

### E. Conclusion

For these reasons, **IT IS RECOMMENDED** that the Court **DENY** Defendant's motion for summary judgment on the basis of exhaustion. (ECF No. 16).

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 25, 2025

s/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge